FEASTER v HOUS

Docket No. 73067. Submitted July 16, 1984, at Detroit.—Decided October 1, 1984. Leave to appeal applied for.

Richard Feaster, Mark Feaster and Russell S. Gill each brought an action in the Macomb Circuit Court against Alan Hous, Robert Nagy and others for damages for injuries sustained in a fire which resulted when flames from a hot water heater ignited gasoline that had spilled on the floor of a service station. Nagy was the general contractor who built the station and Hous was the subcontractor who installed the water heater. The plaintiffs' complaints alleged that the water heater was negligently installed in violation of various building ordinances and that the negligent installation was the proximate cause of the plaintiffs' injuries. The cases were consolidated. Nagy and Hous each filed a cross-claim for indemnification against the other. Nagy and Hous settled with plaintiffs. The court, John G. Roskopp, J., dismissed the cross-claims, finding that the original complaint alleged and from subsequent proceedings it appeared that both parties were actively negligent. Nagy appealed. *Held:*

1. A party seeking indemnity, either common law or under an implied contract of indemnity, must be free from active negligence in order to recover. Active negligence occurs where a party breaches a direct duty owed to another and the breach is the proximate cause of the other's injury. Passive negligence occurs where the active negligence is solely attributable to another and the liability for the injury arises by operation of law. A party is not entitled to either common-law or implied contractual indemnity where the primary complaint alleges active negligence on his part.

2. There must be a special relationship between the parties

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading §§ 71 *et seq.,* 230 *et seq.*

[2] 41 Am Jur 2d, Indemnity §§ 2, 6, 19.

[3, 4] 41 Am Jur 2d, Indemnity § 42.

57 Am Jur 2d, Negligence § 4.

[5] 13 Am Jur 2d, Building and Construction Contracts § 138 *et seq.*

57 Am Jur 2d, Negligence § 34.

[6] 41 Am Jur 2d, Indemnity § 19.

or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification in order to establish an implied contract to indemnify. Nagy pled no facts to give rise to a special relationship or a course of conduct by Hous to establish an implied contract of indemnity.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM.

A motion for summary judgment based on the failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint; the factual allegations of the complaint are taken as true along with any inferences fairly drawn therefrom and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

2. INDEMNITY — CONTRACTS — COMMON LAW.

A right to indemnity can arise from three possible sources: the common law, an implied contract, or an express contract.

3. INDEMNITY — ACTIVE NEGLIGENCE — PASSIVE NEGLIGENCE.

A party seeking indemnity must plead and prove freedom from personal fault, that is, active or causal negligence; active negligence occurs where a party breaches a direct duty owed to another and the breach is the proximate cause of the other's injury; passive negligence occurs where the active negligence is solely attributable to another and the liability for the injury arises by operation of law.

4. INDEMNITY — COMMON-LAW INDEMNITY — NEGLIGENCE — TORTS.

A trial court, in determining whether a party to a tort action is entitled to common-law indemnity, must consider the primary plaintiff's complaint, and where the complaint alleges active rather than passive negligence the party is not entitled to common-law indemnity.

5. NEGLIGENCE — CONSTRUCTION CONTRACTORS.

A construction contractor is liable for forseeable harm to third parties resulting from the contractor's negligent performance of a completed contract; the fact that a length of time has elapsed between the contractor's work and the injury does not insulate the contractor from liability but it is a factor to be considered when deciding whether the contractor's negligence was the proximate cause of the injury.

6. INDEMNITY — IMPLIED CONTRACT TO INDEMNIFY.

> There must be a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification in order to establish an implied contract to indemnify.

*Gregory E. Snow,* for defendant Hous.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Ernest R. Bazzana* and *C. Barry Wetherington),* for defendant Nagy.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

V. J. BRENNAN, P.J. Appellant, Robert Nagy appeals as of right from a June 15, 1983, Macomb County Circuit Court order which granted the motion of appellee, Alan Hous, for summary judgment, GCR 1963, 117.2(1), and dismissed Nagy's cross-claim against Hous. Hous's cross-claim against Nagy was also dismissed.

The instant appeal involves only the question of indemnification as between Nagy and Hous. However, the case arises from a consolidated suit brought by Richard Feaster, Mark Feaster, and Steven Gill (the primary plaintiffs), who were injured in an explosion which occurred at a gasoline station located in Washington Township, Macomb County.

The primary plaintiffs were severely burned in the fire which accompanied the explosion. These three men had been draining an automobile gas tank in a station bay when spilled gasoline was allegedly ignited by flames from a hot water heater located in an adjoining utility room.

In the primary plaintiffs' complaints, Nagy (the general contractor involved in the station's construction) and Hous (the subcontractor allegedly in

charge of installation of the water heater) were named as defendants along with others who are not parties to the instant appeal. The complaints alleged *inter alia* that the defendants Nagy and Hous negligently installed a gas water heater on the ground floor of the service station in violation of township building ordinances and such negligent installation was a proximate cause of plaintiff's injuries.

Nagy and Hous filed cross-claims for indemnification against each other on October 21, 1980, and April 2, 1981, respectively. The plaintiffs settled their case. Nagy and Hous each paid $75,000. The action continued in order to settle the cross-claims of indemnification. After the parties' cross-claims were dismissed, Nagy moved for reconsideration, which was denied in an order dated July 19, 1983.

The first issue for our consideration is whether the trial court erred in granting summary judgment to Hous on the grounds that Nagy's claim of common-law indemnity was barred because the primary plaintiffs' complaints alleged that Nagy was actively negligent. Nagy asserts that the complaints contained mixed allegations of active and passive negligence and, therefore, summary judgment was improper.

As stated in *Reed v St Clair Rubber Co,* 118 Mich App 1, 5; 324 NW2d 512 (1982):

"A motion brought pursuant to GCR 1963, 117.2(1) challenges the legal sufficiency of plaintiff's claim only. In *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978), this Court detailed the applicable rules for passing on a motion seeking summary judgment pursuant to GCR 1963, 117.2(1):

" 'The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion

is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972).' "

In Michigan, three possible sources of a right to indemnification have been recognized: the common law; an implied contract; and an express contract. *Langley v Harris Corp,* 413 Mich 592, 596-597; 321 NW2d 662 (1982).

"It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault. This has been frequently interpreted to mean that the party seeking indemnity must be free from active or causal negligence. *Provencal v Parker,* 66 Mich App 431; 239 NW2d 623 (1976); *Indemnity Ins Co of North America v Otis Elevator Co,* 315 Mich 393; 24 NW2d 104 (1946); *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965); *Liberty Mutual Ins Co v Curtis Noll Corp,* 112 Mich App 182; 315 NW2d 890 (1982). If a party breaches a direct duty owed to another and this breach is the proximate cause of the other party's injury, that is active negligence. Where the active negligence is attributable solely to another and the liability arises by operation of law, that is passive negligence." 413 Mich 597-598.

To determine whether the indemnitee was "actively" or "passively" negligent, the court examines the primary plaintiff's complaint. "If [the]

complaint alleges 'active' negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity." *Peeples v Detroit,* 99 Mich App 285, 293; 297 NW2d 839 (1980). *Swindlehurst v Resistance Welder Corp,* 110 Mich App 693, 698; 313 NW2d 191 (1981), *lv den* 414 Mich 895 (1982); *Reed, supra,* p 8.

Nagy first argues that the primary plaintiffs' complaints contained allegations of passive negligence because the statements used by plaintiffs could be construed to mean that Nagy allowed Hous to perform an inherently dangerous activity by installing the water heater. Nagy claims that, under the inherently dangerous activity doctrine, his personal liability would arise vicariously and his negligence would be passive.

In our opinion, Nagy's reliance on this doctrine is misplaced. The water heater in question was installed some six years before the explosion and resulting fire. If the plaintiffs had been injured during the course of the heater's installation, it is possible that this doctrine could have been invoked. See generally *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972).

Our review of the plaintiffs' complaints reveals that the allegations referred to by Nagy focus upon the active negligence of Nagy, Hous, and a third subcontractor in their installation of the water heater in violation of various codes. In short, plaintiffs have alleged that these contractors agreed among themselves to place the heater on the floor rather than eight feet above the floor, as specified in the building code. Therefore, defendants' installation of the heater in an improper location created the allegedly "dangerous condition".[1]

---

[1] We decline to comment on whether or not plaintiffs pled a viable

Nagy also advances the argument that, because the plaintiffs pled a breach-of-implied-warranty theory of recovery, common-law indemnification is not precluded because his potential liability would not be based upon active negligence.

In their complaints, the plaintiffs sought recovery under two theories, negligence and breach of an "implied warranty". Plaintiffs averred that Nagy and Hous, acting in common with the other defendants, impliedly warranted to the public and plaintiffs that the station was not "defectively assembled", was without latent defects such as the "illegally" located water heater, and the station was safe for conducting routine automobile services.

It is the general rule in Michigan that a contractor is not insulated from liability for forseeable harm to third persons resulting from the contractor's negligent peformance of a completed contract. A third party who is injured after the contractee or owner accepts the negligently done work may maintain an action against the contractor even though a length of time has elapsed between the contractor's work and the injury. The lapse of time is one factor to be considered by a trier of fact in deciding whether the contractor's original negligence was the cause of the party's injury. See *Kapalczynski v Globe Construction Co,* 19 Mich App 396; 172 NW2d 852 (1969). The contractor's liability for his negligent work is subject to the requirements of proof in tort litigation as to negligence and proximate cause. *Hilla v Gross,* 43 Mich App 648; 204 NW2d 712 (1972).

In our opinion, the warranty theory as pled by plaintiffs is founded upon the direct action in

cause of action founded on a nuisance theory because neither party has raised the issue.

negligence against defendants Nagy, Hous and the other defendants as joint tortfeasors. We do not read plaintiffs' warranty theory as one which would impose vicarious liability on an individual defendant for the negligent acts of another defendant. Here, a breach of implied warranty by any defendant would be predicated on a finding of negligence in the work, performance, or conduct of that individual defendant. A breach of warranty that one's work is negligence free would necessarily occur only if there was negligence in the performance of that work. Therefore, Nagy only impliedly warranted that *his* work or performance was negligence free.

In comparison, in a products liability suit, a claim that a seller has breached an implied warranty of merchantability would support a claim for common law indemnity because "[a] finding of the seller's liability * * * arises solely by operation of law and without regard to the seller's negligence, MCL 440.2314; MSA 19.2314". *Skinner v D-M-E Corp,* 124 Mich App 580, 587; 335 NW2d 90 (1983). Here, a breach of implied warranty would necessitate finding the individual defendant negligent. Therefore, although two theories of recovery have been pled, it is our opinion that plaintiffs' complaints aver only active negligence on Nagy's part rather than allegations of both passive and active negligence. The trial court did not err in dismissing Nagy's common-law claim for indemnity.

The second issue for our determination is whether Nagy was entitled to implied contractual indemnification. Nagy argues that the allegations of active negligence in the primary plaintiffs' complaints should not defeat his claim for implied contractual indemnification.

An implied contract to indemnify arises only if

there is a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification. *Palomba v City of East Detroit,* 112 Mich App 209, 217; 315 NW2d 898 (1982). This Court must examine the third party's complaint as well as the primary complaints. *Diekevers v SCM Corp,* 73 Mich App 78; 250 NW2d 548 (1976).

The primary complaints alleged active negligence on Nagy's part. Nagy's third-party complaint against Hous asserts the primary negligence of Hous as the proximate cause of plaintiffs' injuries and only passive negligence on Nagy's part based upon a conclusory statement that Nagy's negligence arises solely by operation of law or via the doctrine of *respondeat superior.*

Implied contractual indemnification is not available to a party who is not free from active negligence. *Skinner v D-M-E Corp, supra,* p 585.[2] See also *Swindlehurst, supra,* p 701 ("a complete absence of fault on the part of the indemnitee") and *Reed, supra,* p 10. "[I]f [the primary] complaint alleges active negligence, the defendant, third-party plaintiff is not entitled to either common-law indemnification or implied contractual indemnification." *Johnson v Bundy,* 129 Mich App 393, 399; 342 NW2d 567 (1983). In the instant case, the primary plaintiffs only alleged active negligence.

[2] In *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696-697; 273 NW2d 527 (1978), lv den 406 Mich 880 (1979), the majority held by implication that freedom from active negligence on the part of the party seeking indemnification was not a prerequisite to maintaining an action under the implied contractual indemnification theory. Judge WALSH dissented in *Hill* and he wrote the *Skinner* opinion where he declined to follow the majority rule in *Hill.* See 124 Mich App 586, fn 3. The trend of this Court, notwithstanding *Hill,* is that an indemnitee must be free from active negligence in order to survive a summary judgment motion. Resolution of the instant case does not require us to address the split on this Court.

Assuming *arguendo* that the allegations of active negligence in the primary complaints do not defeat Nagy's claim, except for providing a conclusory statement theorizing his liability under *"respondeat superior"*, Nagy has failed to plead any facts to support his theory of vicarious liability. He does not allege that a special relationship or a course of conduct existed between himself and Hous. Neither has Nagy pled any facts that would tend to show that Hous impliedly agreed to indemnify Nagy if Hous was negligent. Furthermore, Nagy's complaint is devoid of allegations which would establish that Hous's negligence was the sole cause of plaintiffs' injuries. Therefore, Nagy's third-party complaint has failed to state a cause of action for implied contractual indemnity. The trial court did not err in its determination that Nagy was not entitled to implied contractual indemnity.

Affirmed. We retain no further jurisdiction.