Glessie EADS, Plaintiff,

v.

SIMON CONTAINER MACHINERY, INC., Automated Conveyor Systems, Inc., Textron, Inc., and Stanley–Bostitch, Inc., Defendants,

and

AUTOMATED CONVEYOR SYSTEMS, INC., Defendant and Third–Party Plaintiff,

v.

WESTVACO CORPORATION, Third–Party Defendant.

No. 86–71146.

United States District Court, E.D. Michigan, S.D.

Dec. 14, 1987.

Martin N. Fealk, Provizer, Eisenberg, Lichtenstein & Pearlman, Southfield, Mich., for Eads.

James S. O'Leary, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for Simon Container.

Charles C. Cheatham, MacArthur, Cheatham, Acker & Smith, Detroit, Mich., for Automated Conveyor.

Mary Kator, Clark, Klein & Beaumont, Detroit, Mich., for Westvaco.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This litigation arises out of an injury incurred by Plaintiff, Glessie Eads, an employee of Westvaco Corporation (Westvaco). On July 26, 1984, Plaintiff was injured at work when she slipped on a roller of the conveyor system used to feed corrugated material into a folder-gluer machine. The folder-gluer machine was manufactured, designed and sold by Revco, Inc., now known as Simon Container Machinery, Inc. (Simon) The conveyor system was manufactured, designed, distributed and installed by Defendant Automated Conveyor systems, Inc. (Automated)

On February 27, 1986, Plaintiff filed a complaint in Wayne County Circuit Court against Simon and Automated. Plaintiff's complaint alleges breach of a duty to use reasonable care in the design of the folder-gluer and conveyor systems and breach of the implied warranties of fitness. Defend-ants removed the case to this Court based on diversity of citizenship.

On May 15, 1987, Defendant Automated filed a third-party complaint against Plaintiff's employer, Westvaco. The third party complaint alleges that Westvaco is liable for contribution as a joint tort feasor due to its intentional failure to install metal walkways over the conveyor system. The third-party complaint also alleges that Westvaco is liable to Automated for indemnification due to Westvaco's breach of an express or implied agreement to install metal walkways. The matter is presently before the Court on Westvaco's motion to dismiss the third-party complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

■ Although Westvaco has brought its motion under Rule 12(c), the motion essentially challenges the legal basis of Automated's claims and therefore may be evaluated under the same standards as a motion to dismiss brought pursuant to Rule 12(b)(6). *See, Amersbach v. Cleveland,* 598 F.2d 1033, 1038 (6th Cir.1979). The principles which must guide the court in ruling on a motion to dismiss pursuant to Rule 12(b)(6) are as follows:

> When evaluating a motion to dismiss pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965). The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983).

On October 9, 1987, Automated filed a motion to amend its third-party complaint. The proposed amended complaint seeks to clarify the factual and legal grounds supporting Automated's claims for contribution and indemnification. Since under Rule 15 of the Federal Rules of Civil Procedure,

788

leave to amend shall be freely given when justice so requires and since there is no evidence in this case that the amended complaint is interposed for purposes of delay, bad faith or dilatory motive, Automated's motion for leave to amend its complaint is hereby granted. Therefore, Westvaco's motion to dismiss will be evaluated in light of Automated's amended third-party complaint.

Westvaco first argues that Automated has failed to state a claim against Westvaco for contribution. Automated alleges in its amended complaint that the failure of Westvaco to install metal walkways caused the injuries sustained by the plaintiff. Automated alleges that the failure to install walkways was deliberate and willful and created an obvious and inherently dangerous condition in which injuries were certain or substantially certain to occur. Westvaco contends that the facts as alleged do not fall within the intentional tort exception to the exclusivity provision of the Michigan Worker's Disability Compensation Act, M.C.L.A. § 418.101, et seq. (the Act)

The exclusivity provision of the Act initially provided:

that the right to the recovery of benefits under the Act is the employee's exclusive remedy against the employer.

Later, in an opinion rendered by the Supreme Court of Michigan, the Court concluded that actions for intentional torts are not barred by the exclusive remedy provision. *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882 (1986). The *Beauchamp* court adopted the "substantial certainty" test to define an intentional tort. The "substantial certainty" test provides:

An intentional tort "is not ... limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs. If the injury is substantially certain to occur as a consequence of actions the employer intended,

the employer is deemed to have intended the injuries as well.

*Id.* at 21–22, 398 N.W.2d 882. (footnotes omitted). The court stressed that substantial certainty should not be equated with substantial likelihood and the court gave examples of the types of factual scenarios which constituted substantial certainty. *Id.* at 25, 398 N.W.2d 882.

Subsequent to the court's decision in *Beauchamp,* the exclusivity provision was amended to read as follows:

Sec. 131. (1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

According to the terms of the above amendment, the Michigan legislature apparently adopted a stricter "true intentional tort" exception to the exclusivity provision of the Act.

Automated argues that the "substantial certainty" test of *Beauchamp* should apply to this case because it was the law in effect at the time of the Plaintiff's injury. However, the Court is of the opinion that even if that is the appropriate standard by which to evaluate an intentional tort, Automated's claim for contribution still must fail. The court in *Beauchamp* was careful to caution those applying its holding to not equate substantial certainty with substantial likelihood. Two of the cases relied on in *Beauchamp* demonstrate a correct application of the substantial certainty test. The *Beauchamp* court concluded that injury was substantially certain to occur where

the facts of one case indicated that the employer was warned of a dangerous condition in a ditch, a previous cave-in occurred but warnings were ignored, and two men died in a subsequent cave-in. The *Beauchamp* court also concluded that injury was substantially certain to occur in another case where workers complained daily of fumes from hydrogen cyanide gas, and an inspector warned of dangers prior to the death of one worker and injury to others. The facts in the previous two cases went beyond the realm of substantial likelihood of injury into the realm of substantial certainty of injury.

In the present case, the most that can be said about the injury to the Plaintiff is that there was a substantial likelihood of injury. The injury was not substantially certain to occur because there was no evidence of prior injuries and no warnings about a dangerous condition. In fact, the practice of walking over the conveyor system without a walkway existed for a number of years before the Plaintiff's injury occurred. This further bolsters the conclusion that, under the circumstances, there may have been a substantial likelihood of injury but that an injury was not substantially certain to occur. Accordingly, the facts as alleged in the third-party complaint do not establish an intentional tort which would qualify as an exception to the exclusivity provision of the Act.

Since the plaintiff employee in this case could not bring a suit against her employer, neither can a tortfeasor who is liable to the employee for a work-related injury bring a cause of action against the employer. *Downie v. Kent Products, Inc.,* 420 Mich. 197, 362 N.W.2d 605 (1984); *Husted v. Consumers Power Co.,* 376 Mich. 41, 135 N.W.2d 370 (1965). The right of contribution from a joint tort feasor is a derivative right and not a separate cause of action. *Husted,* 376 Mich. at 56, 135 N.W. 2d 370. Thus, if the plaintiff employee cannot sue her employer for the work-related injury, Automated, the alleged tortfeasor, also cannot sue the employer for contribution.

Westvaco next argues that Automated has not stated a claim for indemnification because the underlying complaint alleges active negligence by Automated. In Michigan the right to indemnification arises from the common law, an implied contract or an express contract. *Home Insurance Co. v. Jones & Lamson,* 144 Mich.App. 91, 97, 373 N.W.2d 249 (1985). Furthermore, the right to indemnify based upon an implied contract is only available to a party who can plead and prove freedom from active fault. *Id.* In this case, Automated alleges an implied contract between Automated and Westvaco in which Westvaco agreed to install metal walkways over the conveyor system. Automated argues that if it is at fault, such fault is vicarious in nature, and is therefore passive fault rather than active fault. Automated contends its liability is vicarious because it would only be liable as a contractor for failure of its subcontractor (Westvaco) to complete the installation of the conveyor system.

It is apparent, however, that the underlying complaint alleges acts of negligence other than just failure to provide a walkway so that, even if there were a contractor-subcontractor relationship, Automated could be held liable for other instances of active negligence. Moreover, if it is established at trial that the failure to install a walkway over the conveyor was the sole cause of the plaintiff's injuries, then the employer's negligence, if any, in failing to install the walkway, would operate as a complete defense to the action rather than operating as a basis for a third party complaint for indemnification. *Diekevers v. SCM Corp.,* 73 Mich.App. 78, 81, 250 N.W.2d 548 (1976); *Swindlehurst v. Resistance Welder Corp.,* 110 Mich.App. 693, 698, 313 N.W.2d 191 (1981). Therefore, since the underlying complaint alleges active negligence on the part of Automated, Automated has failed to state a claim against Westvaco for indemnification.

Accordingly, and for the above reasons, third-party defendant's motion to dismiss is GRANTED. Third-party defendant shall prepare an appropriate order.